UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

NEW SOUTH EQUIPMENT MATS, LLC                    PLAINTIFF

VS.                          CIVIL ACTION NO. 3:13CV162TSL-JMR

JON M. KEENER                                    DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Jon
M. Keener to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of
the Federal Rules of Civil Procedure.  Plaintiff New South
Equipment Mats, LLC (New South) has responded to the motion and
the court, having considered the memoranda of authorities
submitted by the parties, concludes, first, that Keener's
objection to personal jurisdiction is without merit, and second,
that his motion to dismiss certain counts of the complaint for
failure to state a claim should be granted in part and denied in
part.

Keener, a resident of Wisconsin, was employed with New South
from 2010 until March 2013, when he accepted a position with
Sterling Lumber Company, Inc.  Upon becoming employed by New
South, Keener executed a Confidentiality and Non-Solicitation
Agreement which provided that during his employment and for a
period of twenty-four months thereafter, Keener "[would] not
directly or indirectly solicit or otherwise induce any employees
of [New South] to leave their employment with [New South], nor
[would] [Keener] directly or indirectly solicit or otherwise

induce any of [New South's] customers, accounts, suppliers or contacts to reduce or cease doing business with [New South]."  The Agreement further reflected Keener's acknowledgment that during his employment, he would necessarily be entrusted with confidential business information and trade secrets, "including but not limited to the identity of accounts, suppliers, customers and others having business dealings with the Company, pricing information pertaining to the Company's business, and other information," and he agreed that such information was the exclusive property of New South.  The Agreement recited that Keener would never disclose or use any of New South's confidential information and trade secrets "in any manner which is adverse to the interests of the company, and that he shall return any and all originals and copies ... in any format whatsoever, containing or pertaining to said information to the Company immediately upon the termination of his employment for any reason."

Following Keener's departure from New South, New South filed the present action, alleging that Keener breached the confidentiality provision of the Agreement by "copying and misappropriating data relating to New South's confidential business information and trade secrets," and specifically by "transferr[ing] all of his Outlook Contacts and New South-related clients and vendors to [an] external hard drive and ... send[ing] information and New South's customer list to his personal email

account."  It further alleged that Keener had "been in contact with New South's competitors regarding some of New South's customers, the availability of New South's product, and disclosed and delivered highly confidential communications between New South and New South's clients to New South's competitor, Sterling Lumber, which now possesses New South's proprietary, confidential and trade secret information."

Keener has moved for dismissal of New South's complaint pursuant to Rule 12(b)(1), arguing that Mississippi lacks personal jurisdiction over Keener because Keener does not have sufficient minimum contacts with Mississippi to comport with due process under the Fourteenth Amendment.  The basic principles on which his motion are based are well-settled.

> Personal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on "traditional notions of fair play and substantial justice."  Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 105, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); Internat'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). A non-resident defendant establishes such minimum contacts by purposefully availing himself of the benefits of the forum state, so that he "should reasonably anticipate being haled into court" there. [Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2182 (1985)]; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).
>
> Personal jurisdiction may be "specific" or "general".  For specific personal jurisdiction, a plaintiff makes a *prima facie* showing of minimum

3

contacts when his claim arises from the defendant's
contact with the forum.  <u>Helicopteros Nacionales de
Colombia, S.A. v. Hall</u>, 466 U.S. 408, 104 S.Ct. 1868, 80
L. Ed. 2d 404 (1984).  For general personal
jurisdiction, a plaintiff makes the requisite showing
when that defendant's contacts are "continuous and
systematic," so that the exercise of jurisdiction is
proper irrespective of the claim's relationship to the
defendant's contact with the forum.  <u>Perkins v. Benquet
Consol. Mining Co.</u>, 342 U.S. 437, 72 S. Ct. 413, 96 L.
Ed. 485 (1952).

<u>Companion Property and Cas. Ins. Co. v. Palermo</u>, 723 F.3d 557, 559

-60 (5th Cir. 2013).  Keener contends, and New South does not

dispute, that he has not had sufficient contacts with Mississippi

to be subject to general jurisdiction in Mississippi.  Beyond

that, while Keener implicitly acknowledges he had significant

contacts with Mississippi in connection with his employment with

New South, he argues that the present cause of action does not

arise out of those contacts; and he maintains that he has had no

contacts with Mississippi related to the alleged breach of the

Agreement, upon which all of New South's claims are based.  In the

court's opinion, however, it is immaterial whether Keener had

sufficient contacts with Mississippi to support an exercise of

specific jurisdiction, as he has consented to personal

jurisdiction in this forum.

The parties' Confidentiality and Non-Solicitation Agreement

includes a forum selection clause, which states:

    (a) Governing Law.  The employment relationship between
    the parties, including but not limited to this
    Agreement, shall be governed by and construed in all

4

respects in accordance with the laws of the State of
Mississippi, and any suit or action arising out of or in
connection with same employment relationship or its
termination, or this Agreement or any breach hereof,
shall be brought and maintained in the federal or state
courts of Madison County, Mississippi, and the parties
consent to said venue and jurisdiction. ...

Personal jurisdiction can be waived by an enforceable forum
selection clause in which the parties consent to personal
jurisdiction in a specified forum. Rudzewicz, 471 U.S. at 473
n.14. The Court in Rudzewicz stated:

> [B]ecause the personal jurisdiction requirement is a
> waivable right, there are a "variety of legal
> arrangements" by which a litigant may give "express or
> implied consent to the personal jurisdiction of the
> court." Insurance Corp. of Ireland v. Compagnie des
> Bauxites de Guinee, [456 U.S. 694, 702, 102 S. Ct. 2099,
> 2105, 72 L. Ed. 2d 492 (1982)]. For example,
> particularly in the commercial context, parties
> frequently stipulate in advance to submit their
> controversies for resolution within a particular
> jurisdiction. See National Equipment Rental, Ltd. v.
> Szukhent, 375 U.S. 311, 84 S. Ct. 411, 11 L. Ed. 2d 354
> (1964). Where such forum-selection provisions have been
> obtained through "freely negotiated" agreements and are
> not "unreasonable and unjust," The Bremen v. Zapata
> Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32
> L. Ed. 2d 513 (1972), their enforcement does not offend
> due process.

Rudzewicz, 471 U.S. at 473, 105 S. Ct. 2174. See Sunday Riley
Modern Skin Care, L.L.C. v. Maesa, Civ. Action No. H-12-1650, 2013
WL 5231860, at *7 (S.D. Tex. Sept. 12, 2013) ("A party who signs a
contract with a forum selection clause has either consented to
personal jurisdiction or waived the requirements for personal
jurisdiction in a selected forum where the clause was obtained

through freely negotiated agreements and is not unreasonable or unjust.") (citing <u>Rudzewicz</u>, 471 U.S. at 473, 472 n.14).

The Fifth Circuit has repeatedly recognized that mandatory forum selection clauses such as that at issue here are presumed to be valid and enforceable,[1] so that the party seeking to bar enforcement bears the heavy burden of demonstrating that the clause is unreasonable under the circumstances.  <u>Afram Carriers, Inc. v. Moeykens</u>, 145 F.3d 298, 301 (5th Cir. 1998).  The Fifth Circuit has identified four bases for concluding that a forum selection clause is unreasonable:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

<u>Calix-Chacon v. Global Intern. Marine, Inc.</u>, 493 F.3d 507, 511 (5th Cir. 2007) (citing <u>Haynsworth v. Corp.</u>, 121 F.3d 956, 963 (5th Cir. 1997)).

Keener argues that the forum selection clause at issue here is unenforceable because the Confidentiality and Non-Solicitation Agreement is void as against public policy and because it would be

---

[1]     The forum selection clause at issue here is unquestionably mandatory, as it states that "[a]ny suit or action arising out of ... this Agreement or any breach hereof, *shall be brought and maintained* in the federal or state courts of Madison County, Mississippi."  (Emphasis added).

inconvenient and unfair for him to be hailed into court in Mississippi.

Importantly, Keener does not contend that *forum selection clauses* are against Mississippi public policy, and in fact they are not.  On the contrary, the Mississippi Supreme Court has explicitly ruled that forum selection clauses are presumptively valid and will be enforced unless the party challenging the clause can show:

> 1. Its incorporation into the contract was the result of fraud, undue influence or overweening bargaining power;
>
> 2. The selected forum is so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of its day in court; or
>
> 3. The enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

Titan Indem. Co. v. Hood, 895 So. 2d 138, 145-46  (Miss. 2004) (citing Zapata, 407 U.S. at 12-13, 92 S. Ct. 1907)).  Keener's position is instead that the Agreement which contains the forum selection clause is itself void as against public policy and that the forum selection clause is consequently unenforceable. However, the Fifth Circuit has made clear that a court determining whether or not to enforce a forum selection clause will not inquire into the enforceability of the contract in which that clause is found.  In Afram Carriers, the court explained:

> "The burden of proving unreasonableness (of a forum selection clause) is a heavy one, carried only by a

7

showing that *the clause* results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the plaintiff of his day in court." <u>Mitsui</u>, 111 F.3d at 35 (emphasis added) (citing <u>THE BREMEN</u>, 407 U.S. at 12-13, 15, 18, 92 S. Ct. at 1914-17). Allegations that the entire contract was procured as the result of fraud or overreaching are "inapposite to our [forum-selection clause] enforceability determination, which must ... precede any analysis of the merits [of the contract's validity]." <u>Haynsworth v. The Corporation</u>, 121 F.3d 956, 964 (5th Cir. 1997) (citation omitted), <u>cert. denied</u>, 523 U.S. 1072, 118 S. Ct. 1513, 140 L. Ed. 2d 666 (1998).

145 F.3d 298, 301 (5th Cir. 1998). Accordingly, Keener's objection to enforceability on public policy grounds fails.

Keener asserts, alternatively, that the forum selection clause is unenforceable because "it would be inconvenient and unfair for [him] to be hailed from his home state of Wisconsin into Mississippi courts." Keener does not elaborate on this assertion, which is hardly sufficient to sustain his burden to establish that his being forced to trial in Mississippi would effectively deprive him of his day in court. The Supreme Court has explained that to carry one's "heavy burden" to demonstrate that a forum selection clause is unenforceable based on inconvenience, it is not enough to show only that "the balance of convenience is strongly in favor of trial in [another forum] (that is, that it will be far more inconvenient for [defendant] to litigate [in Mississippi] than it will be for [plaintiff] to litigate [elsewhere, presumably Wisconsin]), but [he must also

show] that a [Mississippi] trial will be so manifestly and gravely inconvenient to [defendant] that [he] will be effectively deprived of a meaningful day in court...." Zapata, 407 U.S. at 19, 92 S. Ct. 1907; Jimmie Lyles Carpets, Inc. v. Munlake Contractors, Inc., Civ. Action No. 5:11-cv-85(DCB)(JMR), 2012 WL 2222857, at *3 (S.D. Miss. June 14, 2012) (stating that "[t]o meet the heavy burden required to overcome the presumption that a forum selection clause is valid, plaintiff must show that it is an impossibility for her to try her case, not simply a less convenient or effective means of doing so"); Titan Indemnity Co., 895 So. 2d at 147 (stating that "mere reference to the expense the litigant may incur to litigate the matter in another forum does not meet the burden of proof"). Keener has offered no other basis for invalidating or refusing to enforce the forum selection clause to which he agreed and his motion to dismiss for lack of personal jurisdiction will therefore be denied.

Keener has also moved pursuant to Rule 12(b)(6) to dismiss certain counts of the complaint. Specifically, he argues, first, that Count II (Violation of the Computer Fraud and Abuse Act) should be dismissed because New South has not alleged the requisite statutory elements of: (i) a "loss" in excess of $5,000; (ii) "damage" to New South; and (iii) a "transmission" by Keener. Further, he argues that Count IV (Conversion) and Count VI (Demand for Accounting and Disgorgement of Unjust Enrichment) should be

dismissed because both of these counts are preempted by the Mississippi Uniform Trade Secrets Act.  Finally, he argues that Count I (Injunctive Relief) and Count VII (Punitive damages) should be dismissed because neither of these counts is a recognized cause of action under Mississippi law.  The court considers each argument in turn.

In Count II of the complaint, New South alleges violations by Keener of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030.  Specifically, it alleges that Keener violated:

> 18 U.S.C. § 1030(a)(5)(A)(i) of the CFAA by knowingly causing the transmission of New South's proprietary, confidential and trade secret information downloaded from New South's computers, which are protected computers as defined in 18 U.S.C. § 1030(e)(2)(B).... By accessing, collecting and transmitting New South's proprietary, confidential and trade secret information, Keener intentionally caused damage to New South and to New South's computers without authorization by impairing the integrity of information and/or data."

It also alleges that he violated:

> 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally accessing New South's computers, which are protected as defined in 18 U.S.C. § 1030(e)(2)(B) ..., without authorization, and as a result caused damage to New South by impairing the integrity of the information and/or data.

New South avers, finally, that it suffered loss by reason of Keener's alleged violations of CFAA, "including, without limitation, expenses incurred in technical evaluation by IT service providers to evaluate the breach of New South's computer

systems and equipment and to determine what data was taken by Keener, and the violation of the right of privacy."

The CFAA proscribes certain fraudulent or damaging activities related to the use of computers.  As potentially relevant here, a violation of the CFAA occurs when one:

> (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—
> ...
> (C) information from any protected computer.
> ...
>
> (5)(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
>
> (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
>
> (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030(a).[2]

---

[2]     Keener notes in his motion that while New South's complaint identifies §§ 1030(a)(5)(A)(i) and (iii) as the CFAA sections that were allegedly violated, there are no such sections in the CFAA.  Keener speculates that New South likely intended to allege violations of §§ 1030(a)(5)(A) and (C) since those are the provisions to which New South's allegations appear to correlate; and its argument for dismissal proceeds on the basis of this supposition.  It is not apparent to the court that this was New South's intention as it seems just as likely that New South has undertaken to allege a violation of § 1030(a)(2)(C), in addition to one or more subsections of § 1030(a)(5).  Inexplicably, New South has not acknowledged its pleading error or addressed this issue in its response.  However, that omission is of no moment, since in the court's opinion, no claim is stated under any of these potentially applicable provisions.

While "the CFAA is primarily a criminal statute, § 1030(g) provides a civil cause of action in limited circumstances." Garland-Sash v. Lewis, No. 05-6827(WHP), 2012 WL 6188712, at *2 (S.D.N.Y. Dec. 6, 2011); 18 U.S.C. § 1030(g)(providing that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."). "The elements of a private cause of action under this statute are complex:

> a civil action under subsection 1030(g) of the CFAA requires; (1) establishing the elements of the particular substantive (criminal) offense under subsection 1030(a); (2) establishing that the plaintiff suffered "damage or loss" as a result of such a violation (although some, but not all, such offenses themselves already require "damage" and one now requires "damage and loss"); and (3) establishing one of the five types of conduct specified under subsection (c)(4)(A)(i), which are also required under subsection 1030(g) (some of which might also constitute "damage" or "loss")."

Nyack Hosp. v. Moran, No. 08-11112(SCR)(PED), 2010 WL 4118355, at *6 (S.D.N.Y. June 1, 2010) (quoting Czech v. Wall St. on Demand, Inc., 2009 U.S. Dist. LEXIS 114125, at *18-19 (D.Minn. Dec. 8, 2009)).

To the extent that New South has attempted to assert a claim based on the alleged violation of any of the subparts of § 1030(a)(5), no claim is stated as each of these provisions requires damage as an element of the claim, and no damage is

alleged.  Subsection 1030(e)(8) defines "damage" as "any
impairment to the integrity or availability of data, a program, a
system, or information."  In construing the term "damage," courts
have consistently held that "damage" refers to "the destruction,
corruption, or deletion of electronic files, the physical
destruction of a hard drive, or any 'diminution in the
completeness or usability of the data on a computer system.'" <u>See</u>
<u>TriTeq Lock & Sec. LLC v. Innovative Secured Solutions, LLC</u>, Civ.
Action No. 10 CV 1304, 2012 WL 394229, at *6 (N.D. Ill. Feb. 1,
2012) (citing cases); <u>Condux Intern. Inc. v. Haugum</u>, No. 08-4824
ADM/JSM, 2008 WL 5244818, at *7 (D. Minn. Dec. 15, 2008) (relying
on the definition of "integrity" ("wholeness" or "soundness") to
conclude that the CFAA's definition of damage requires "some
diminution in the completeness or useability of data or
information on a computer system").  "[T]he mere copying of
electronic information from a computer system is not enough to
satisfy the CFAA's damage requirement." <u>Compare Farmers Ins.</u>
<u>Exch. v. Auto Club Group</u>, No. 11C1332, 2011 WL 4888889, at *4
(N.D. Ill. Oct. 13, 2011).  <u>See also</u> <u>Landmark Credit Union v.</u>
<u>Doberstein</u>, 746 F. Supp. 2d 990, 993-94 (E.D. Wis. 2010)
("[S]eemingly every court in this circuit that has interpreted the
meaning of the word 'damage' in the CFAA has held that damage does
not encompass harm from the mere disclosure of information and the
CFAA is not intended to expansively apply to all cases where a

trade secret has been misappropriated by use of a computer")
(internal quotations omitted).

New South alleges that Keener "access[ed] New South's
computers ... without authorization ... and as a result caused
damages."  Clearly, there is no basis for concluding that "damage"
resulted from Keener's merely accessing the computers.  New South
further declares that by "accessing, collecting and transmitting
New South's proprietary, confidential and trade secret
information, ... Keener intentionally caused damage to .... New
South's computers ... by impairing the integrity of information
and/or data."  Yet there is nothing in the complaint's factual
allegations to indicate that Keener did more than copy files and
transmit information.  There is no allegation that he deleted
files.  The reference to Keener's actions as "impairing the
integrity of information and/or data" "essentially parrots the
statutory language and is insufficiently factual to frame
plausibly the damages element of defendant's CFAA claim."  Bashaw
v. Johnson, No. 11-2693-JWL, 2012 WL 1623483, at *1-3 (D. Kan. May
9, 2012) (holding that conclusory allegation that claimant "has
been damaged," unaccompanied by allegation as to the nature of
such damage, and further assertion that "data was erased" without
identification of the data that was allegedly erased, insufficient
to state CFAA claim); see also TriTeq Lock, 2012 WL 394229, at *6
(holding that plaintiff did not sufficiently allege "damage" for

14

purposes of CFAA claim where complaint alleged only that defendant caused damage but failed to allege any facts "to give color to this bare assertion of damage"); <u>Ipreo Holdings LLC v. Thomson Reuters Corp .</u>, No. 09 Cv. 8099(BSJ), 2011 WL 855872, at *7 (S.D.N.Y. Mar. 8, 2011) (stating that complaint must allege with some particularity "damage" as defined by the CFAA); <u>Fink v. Time Warner Cable</u>, No. 08 Civ. 9628(LTS)(KNF), 2009 WL 2207920, at *4 (S.D.N.Y. July 23, 2009) (dismissing CFAA claim where plaintiff alleged only that defendant caused damage by impairing the availability of data).  Accordingly, the court finds that New South has not sufficiently pled a claim for "damage" under § 1030(a)(5).[3]

Arguably, in addition to undertaking to state a claim for relief based on an alleged violation of § 1030(a)(5), New South has attempted to state a claim based on an alleged violation of § 1030(a)(2)(C), which prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] ... information from any protected computer."  Keener does not address this provision specifically in its motion, but he does argue more generally that New South has failed to state a cognizable claim for any violation of the CFAA because it has failed to allege that it sustained any "loss" or

---

[3]     The court thus does not address Keener's further argument that New South has failed to allege a "transmission," as required to state a claim under 18 U.S.C. § 1030(a)(5)(A).

"damages" in excess of $5,000, which is a condition precedent to bringing suit under the CFAA.  Indeed, in order to bring any civil action under the CFAA, New South must show not only that it suffered "damage" or "loss" by a defendant's alleged actions, but such damage or loss must meet the $5,000 minimum statutory threshold set forth in 18 U.S.C. § 1030(c)(4)(A)(i)(I).  See 18 U.S.C § 1030(c)(4)(A)(i)(I) (requiring that the plaintiff suffer a "loss ... during any 1-year period ... aggregating at least $5,000 in value"); see also Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 439-40 (2d Cir. 2004) (joining "(near) unanimous view that any civil action under the CFAA involving 'damage or loss,' ... must satisfy the $ 5,000 threshold").[4]

New South alleges that it suffered loss by reason of Keener's alleged violations of CFAA, "including, without limitation, expenses incurred in technical evaluation by IT service providers to evaluate the breach of New South's computer systems and

---

[4]    To state a claim under § 1030(a)(2)(C), New South need not plead or prove that it sustained "damage," but it must plead and prove that it suffered a "loss" that meets the $5,000 statutory threshold.  However, to state a claim under § 1030(a)(5), New South must plead and prove both that it sustained "damage" *and* that such "damage" caused "loss aggregating at least $5,000 in value during any 1-year period to one or more individuals ...." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 439-440 (2d Cir. 2004) (quoting 18 U.S.C. § 1030(e)(8)). Thus, even if New South had alleged facts that would support its claim that Keener's alleged actions resulted in "damage," as that term is defined by the CFAA, the court would still find that it has failed to state a claim upon which relief can be granted since there is no allegation that such "damage" caused a loss of at least $5,000.

equipment and to determine what data was taken by Keener, and the violation of the right of privacy." However, it has neither alleged that it has sustained a loss of at least $5,000 nor pled facts that would support a conclusion that it has suffered loss totaling at least $5,000. It has thus plainly failed to state a claim for relief under the CFAA. See Fontana v. Corry, Civil Action No. 10-1685, 2011 WL 4473285, at *10 (W.D. Pa. Aug. 30, 2011) (holding that "generalized allegation of damage and loss in excess of $5,000 during a one-year period is insufficient to plead the requisite jurisdictional amount under the CFAA"); Oce North America, Inc. v. MCS Servs., Inc., 748 F. Supp. 2d 481, 488 (D. Md. 2010) (finding plaintiff's allegation that it "has suffered impairment to the integrity or availability of its data, programs, systems and information resulting in losses or damages in excess of $5000 during a one year period" to be merely conclusory and insufficient to plead the $5000 minimum damages requirement to bring suit under the CFAA). Count II will be dismissed.

Keener next seeks dismissal of New South's claims for conversion and for accounting/unjust enrichment (set forth as Counts IV and VI) on the basis that such claims are are preempted by the Mississippi Uniform Trade Secrets Act (MUTSA), Miss. Code Ann. § 75-26-1 se seq. MUTSA creates a cause of action for the misappropriation of another's trade secrets when those secrets are accessed by improper means. By its express terms, the MUTSA

17

preempts "conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret."  Miss. Code Ann. § 75-26-15(1).  However, the Act's preemptive reach does not extend to "[o]ther civil remedies that are not based upon misappropriation of a trade secret...."  Id. § 75-26-15(1)(b).

In his motion, Keener argues that New South's claims for conversion and accounting/unjust enrichment are preempted by MUTSA as those claims are factually premised on the same conduct that underlies New South's misappropriation of trade secrets claim. New South argues in response that its claim for Keener's alleged conversion of trade secrets is not preempted by MUTSA since it can prove the elements of its conversion claim without establishing the elements of a misappropriation claim.  In Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc., 725 So. 2d 902 (Miss. 1998),[5] the only Mississippi case concerning Mississippi's Uniform Trade Secrets Act, the court cited with approval the opinion of

---

[5]      In its reply, Keener does not address this argument, taking the position that "New South ... apparently concedes that its conversion claim is preempted to the extent it is based on Keener's alleged misappropriation of trade secrets."  In fact, New South did not concede this and instead, plainly states in its response that "MUSTA [sic] also does not preempt New South's conversion claim with respect to its trade secrets."

However, the court notes that New South did not address Keener's preemption argument as it applies to New South's accounting/unjust enrichment claim.  Keener asserts, and the court is inclined to agree, that based on this failure, New South may fairly be said to have confessed the motion as to this count.

the Virginia district court in <u>Smithfield Ham and Products Co.,</u> <u>Inc. v. Portion Pac, Inc.</u>, 905 F. Supp. 346, 348 (E.D. Va. 1995), which held that a tort claim will not be preempted by the Uniform Trade Secrets Act if the plaintiff is "able to show that the distinct theories of relief sought are supported by facts unrelated to the misappropriation of the trade secret." <u>Smithfield Ham</u>, 905 F. Supp. at 348-49.  The court in <u>Fred's</u> <u>Stores</u> thus concluded that where a claim can "stand alone and withstand summary judgment even without [the plaintiff] proving that the [property at issue] was a trade secret," there is no preemption.  <u>Fred's Stores</u>, 725 So. 2d at 908.

The court in <u>Fred's Stores</u> did not consider the specific issue presented here.  However, in <u>Smithfield</u>, upon which the court in <u>Fred's Stores</u> relied, the court observed that "[t]he plain language of the preemption provision indicates that the law was intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." <u>Smithfield</u>, 905 F. Supp. at 348.  <u>See</u> <u>also</u> <u>K.F. Jacobsen</u> <u>& Co., Inc. v. Gaylor</u>, Case No. 3:12-CV-2062-AC, 2013 WL 2318853, at *7 (D. Or. May 28, 2013)(stating that "[w]here the essence of the claim relates primarily to the alleged misappropriation of a trade secret, the claim is displaced by the preemptive language of the Trade Secrets Act"); <u>Mortgage Specialists, Inc. v. Davey</u>, 153

19

N.H. 764, 775 (N.H. 2006) (holding that claim will be preempted when it is "based solely on, or to the extent [that it is] based on, the allegations or the factual showings of unauthorized use of ... information or misappropriation of a trade secret"). Consistent with this purpose, courts that have considered the issue, with one exception, have been consistent in holding that a claim for *conversion of trade secrets* is preempted by the Uniform Trade Secrets Act.[6]  In this case, New South's claim for

---

[6]    The only case that has found a claim for conversion of trade secrets is not preempted is J.T. Shannon Lumber Co., Inc. v. Gilco Lumber, Inc., Cause No. 2:07CV119-SA-SAA, 2010 WL 234996, at *8 (N.D. Miss. Jan. 15, 2010) ("Plaintiff's conversion of trade secrets claim is not preempted.").  With respect, the court must disagree.  Every other court considering the issue has held to the contrary.  See K.F. Jacobsen & Co., Inc. v. Gaylor, Case No. 3:12-CV-2062-AC, 2013 WL 2318853, at *7 (D. Or. May 28, 2013) ("[Oregon] Trade Secrets Act preempts conversion claims based on alleged misappropriation of trade secrets"); Madison Oslin, Inc. v. Interstate Resources, Inc., No. 2:11-cv-01343-SLB, 2012 WL 4730877, at *9 (N.D. Ala. Sept. 30, 2012) (conversion claim based on alleged "'wrongful use and benefit of plaintiffs' 'novel idea, trade secrets and/or other confidential information' ... is preempted because 'the factual basis for this claim is essentially the same as the one for the ATSA claim'") (citation omitted); Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp., No. 3:11-cv-00793-RCJ-VPC, 2012 WL 3884939, at *5 (D. Nev. Sept. 6, 2012) (claim for conversion was preempted as it was "base[d] upon the alleged misappropriation of trade secrets"); Nova Design Technologies, Ltd. v. Walters, 875 F. Supp. 2d 458 (E.D. Pa. 2012) (conversion claim based on trade secret misappropriation preempted by UTSA); Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc., 852 F. Supp. 2d 925, 940-41 (S.D. Ohio 2012) (conversion claim based on defendant's wrongful taking of "names, addresses, or phone numbers of Plaintiffs' business contacts," was based on same operative facts as USTA claim and was thus preempted by UTSA); B & F Sys., Inc. v. LeBlanc, Civ. No. 7:07-CV-192 (HL), 2011 WL 4103576, at *27 (M.D. Ga. Sept. 14, 2011) (conversion claim preempted by GTSA where basis for claim, i.e. that defendants allegedly took plaintiff's proprietary information, was

same as its misappropriation of trade secrets claim); <u>BlueEarth
Biofuels, LLC v. Hawaiian Elec. Co.</u>, 780 F. Supp. 2d 1061, 1080-81
(D. Hawaii 2011) (claim preempted by HUTSA "to the extent that
Plaintiff relies on Aloha's solicitation of business from
BlueEarth's clients by using its confidential proprietary
information to establish conversion"); <u>Hallmark Cards v. Monitor
Clipper Partners</u>, 757 F. Supp. 2d 904, 917 (W.D. Mo. 2010) (claim
for conversion would be preempted by MUTSA if the information
constituted a trade secret); <u>Ultimate Timing, L.L.C. v. Simms</u>, 715
F. Supp. 2d 1195, 1208 (W.D. Wash. 2010) (tort claim preempted
where facts alleged to support claim are the same as those that
support the UTSA claim); <u>T.D.I. Intern., Inc. v. Golf
Preservations, Inc.</u>, Civ. Action No. 6:07-313-DCR, 2008 WL 294531,
at *6 (E.D. Ky. Jan. 31, 2008) (conversion claim would be
preempted by KUTSA where plaintiffs' allegations center
exclusively on the defendants' alleged unauthorized use of
plaintiff's trade secrets); <u>Polar Molecular Corp. v. Amway Corp.</u>,
No. 1:07-CV-460, 2007 WL 3473112, at *7 (W.D. Mich. Nov. 14, 2007)
(conversion claim was based solely upon the theft or misuse of a
trade secret preempted by Michigan UTSA); <u>Hauck Mfg. Co. v. Astec
Indus., Inc.</u>, 375 F. Supp. 2d 649 (E.D. Tenn. 2004) (conversion
claim against former employee who took documents with him when he
went to work for competitor was preempted under TUSTA where
documents derived their primary, if not entire, value from trade
secrets contained therein); <u>AutoMed Techs., Inc. v. Eller</u>, 160 F.
Supp. 2d 915, 922 (N.D. Ill. 2001) (conversion claim preempted by
the Illinois UTSA where it was "really just another way of
charging that defendants took AutoMed's secret information");
<u>Powell Prods., Inc. v. Marks</u>, 948 F. Supp. 1469, 1475 (D. Colo.
1996) (UTSA preempted manufacturer's conversion claim only to the
extent the claim was based on the conversion or theft of the
manufacturer's idea or "trade secrets"); <u>Silvaco Data Sys. v.
Intel Corp.</u>, 184 Cal. App. 4th 210, 238, 109 Cal. Rptr. 3d 27
(2010) ("[i]f the only arguable property identified in the
complaint is a trade secret, and the only basis for any property
right is trade secrets law, then a conversion claim predicated on
the theft of that property is unquestionably 'based upon
misappropriation of a trade secret' and the conversion claim is
preempted"); <u>HDNet LLC v. North Am. Boxing Council</u>, 972 N.E.2d
920, 927 (Ind. Ct. App. 2012) (claim  for conversion of trade
secrets preempted); <u>Mortgage Specialists, Inc. v. Davey</u>, 153 N.H.
764, 775 (N.H. 2006) (claim for conversion of trade secrets
preempted); <u>R.K. Enter., LLC v. Pro-Comp Mgmt., Inc.</u>, 356 Ark.
565, 574, 158 S.W.3d 685, 690 (Ark. 2004) (claim for damages for
conversion preempted as such claim stemmed from same acts
constituting a violation of UTSA); <u>cf</u>. <u>Nucor Corp. v. Bell</u>, 482 F.

conversion of trade secrets is premised on the same facts as its claim for misappropriation of trade secrets.  The court therefore concludes that to the extent that New South's claim is for conversion of information that is properly classified as trade secrets, the claim is preempted.

In its response, New South points out that it has alleged that in addition to seeking relief for conversion of trade secrets, it has also alleged that Keener converted confidential and proprietary information, and it submits that the conversion claim, to the extent it is based on the conversion of confidential and proprietary information, is not preempted by MUTSA.  Most of the courts that have considered this issue hold that UTSA preemption extends to claims for the misappropriation of confidential or proprietary information that does not qualify as trade secrets.

---

Supp. 2d 714, 726-27 (D.S.C. 2007) (summary judgment denied since "only claims purporting to provide a remedy for the misappropriation of 'trade secrets' are preempted" and fact issue was presented as to whether misappropriated information was "trade secrets"); Russo v. Ballard Med. Prods., No. 2:05 CV 59, 2006 WL 2345868, at *10 (D. Utah Aug. 10, 2006) (dismissal denied as it was "too early to know if [the plaintiff's] conversion and unjust enrichment claims [were] 'based upon misappropriation of a trade secret' and therefore preempted"); Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc., 318 F. Supp. 2d 216, 219-20 (D. Del. 2004) ("if a fact finder were to find that the processes and formulas ... are Dunlop's trade secrets ... then Dunlop's common law claims for conversion and unjust enrichment are preempted ...."); Int'l Paper Co. v. Gilliam, 63 Va. Cir. 485, 490 (Va. Cir. Ct. 2003) ("VUSTA does not preempt alternative tort recovery unless it is clear that the price list falls within the confines of the Act," i.e. constitutes a trade secret).

[This] line of cases holds that determining whether the
allegedly misappropriated information constitutes a
trade secret is irrelevant for preemption purposes
because the UTSA preempts all claims based upon the
unauthorized use of information, even if the information
does not meet the statutory definition of a trade
secret." Mediware Information Sys., Inc. v. McKesson
Information Solutions, LLC, 2007 WL 926142, *2 (D. Kan.
Mar. 26, 2007) (declining to address the issue because
the tortious interference claims alleged by the
plaintiff are not "based upon misappropriation of a
trade secret" and thus are not preempted). See, e.g.,
AirDefense, Inc. v. AirTight Networks, Inc., 2006 WL
2092053, *3 (N.D. Cal. July 26, 2006) (agreeing with
"multiple federal courts" that claims based on the same
factual allegations as the claim for misappropriation of
trade secrets are preempted and evaluating claims when
ruling on a motion to dismiss); Mortgage Specialists,
Inc. v. Davey, 904 A.2d 652, 664 (N.H. 2006); Ethypharm
S.A. France v. Bentley Pharms., Inc., 388 F. Supp. 2d
426, 433 (D. Del. 2005) ("Because all claims stemming
from the same acts as the alleged misappropriation are
intended to be displaced, a claim can be displaced even
if the information at issue is not a trade secret.");
Savor, Inc. v. FMR Corp., 812 A.2d 894, 898 (Del. 2002)
(upholding the district court's determination that
common law claims based on "the same alleged wrongful
conduct as the trade secrets claims" are precluded);
Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d
968, 971 (N.D. Ill. 2000) (rejecting an argument that
"preemption is improper because the confidential
information taken by [defendant] may not rise to the
level of a trade secret," and explaining that this
"theory would render [the displacement provision]
meaningless, for it would forbid preemption of state law
claims until a final determination has been made with
respect to whether the confidential information at issue
rises to the level of a trade secret"); Glasstech, Inc.
v. TGL Tempering Sys., Inc., 50 F. Supp. 2d 722, 730
(N.D. Ohio 1999).

Chatterbox, LLC v. Pulsar Ecoproducts, LLC, No. CV 06-512-S-LMB,

2007 WL 1388183, at *2-3  (D. Idaho May 9, 2007) (describing this

as the majority view).  Mattel, Inc. v. MGA Entertainment, Inc.,

23

782 F. Supp. 2d 911 (C.D. Cal. 2011), is representative of the reasoning of these courts.  In <u>Mattel</u>, the court opined that allowing the plaintiff to claim to maintain a claim for conversion of non-trade secret confidential information would undermine the courts' interest in redeeming the UTSA's purpose of "provid[ing] unitary definitions of trade secret and trade secret misappropriation," <u>id</u>. at 996–97 (internal quotation marks and citations omitted).  <u>See also</u> <u>Silvaco Data Sys. v. Intel Corp.</u>, 184 Cal. App. 4th 210, 239 n.22, 109 Cal. Rptr. 3d 27 (2010) ("We emphatically reject the [] suggestion that the uniform act was not intended to preempt 'common law conversion claims based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant.'") (quoting <u>Cenveo v.</u> <u>Slater</u>, Civ. Action No. 06–CV–2632, 2007 WL 527720, at *4 (E.D. Pa. Feb. 12, 2007)).  It further reasoned that

> a claim for conversion requires the existence of a property right, and "information is not property unless some law makes it so."  <u>Silvaco</u>, 184 Cal. App. 4th at 239, 109 Cal. Rptr. 3d 27.  [The plaintiff] cannot "identif[y] any property right" in its confidential information "outside of trade secrets law," because no such property right exists under California law.  <u>Id.</u>

<u>Mattel</u>, 782 F. Supp. 2d at 997.

In <u>J.T. Shannon Lumber Co., Inc. v. Gilco Lumber, Inc.</u>, Cause No. 2:07CV119–SA–SAA, 2010 WL 234996 (N.D. Miss. Jan. 15, 2010), in response to the defendant's argument that the plaintiff's claim for conversion of alleged trade secrets was preempted by MUTSA,

24

the court ruled that "the plaintiff's claim for conversion

fail[ed]," reasoning that a claim for conversion requires "proof

of a wrongful possession, or the exercise of a dominion in

exclusion or the defiance of the owner's right, or of an

unauthorized and injurious use, or of a wrongful detention after

demand[,]" id. at 8 (quoting Wilson v. GMAC, 883 So. 2d 56, 68

(Miss. 2004)), and that "[t]o the extent that this Court has ruled

that information is not a trade secret, J.T. Shannon can not prove

any ownership right in such information," id.  It is not clear

whether the court in Gilco considered the conversion claim (to the

extent it was based on non-trade secret information)[7] to be

preempted or rather to be without merit.

Regardless, in the case at bar, it appears that while

plaintiff's complaint references Keener's wrongful taking and

disclosure of "confidential information," "business information"

and "proprietary information," the nature of the information which

the complaint identifies as having been taken is trade secrets.

In Unified Brands, Inc. v. Teders, 868 F. Supp. 2d 572 (S.D. Miss.

2012), the plaintiff Unified Brands alleged that it owned

confidential and proprietary information, which included product

pricing and customer-related information.  The court observed that

"[t]his type of information has been found to be trade secrets for

---

[7]   The court clearly held that the claim was preempted to
the extent it was based on trade secret information.  See supra
note 6.

the purpose of the MUTSA," id. at 583 (citing Union Nat'l Life Ins. Co. v. Tillman, 143 F. Supp. 2d 638, 644 (N.D. Miss. 2000) (finding that information regarding the plaintiff's business methods and procedures as well as business accounts which included the names of its customers, were trade secrets for the purposes of the MUTSA); Fred's Stores, 725 So. 2d at 911 (finding the plaintiff's master customer list was a trade secret for the purposes of the MUTSA)); and it held that based on allegations that the defendant Teders had obtained, i.e., made copies of, said proprietary and confidential information when he knew he was planning to leave his employment with Unified and begin working for a competitor and that he later disclosed information, "Unified ha[d] alleged a plausible MUTSA claim." Id. at 583–84.

In the case at bar, New South alleges, similar to the plaintiff in Unified, that Keener converted its "confidential, proprietary, business information and trade secrets," which it identifies as "all of his Outlook Contacts and New South-related clients and vendors" and "New South's customer list" and information regarding "some of New South's customers, the availability of New South's product" and "highly confidential communications between New South and New South's clients." Neither in the complaint nor in its response to Keener's motion has New South identified any non-trade secret information. In the court's opinion, New South's conclusory charge that Keener

26

converted "confidential" or "proprietary" information, without any accompanying allegation to suggest that such information was of a non-trade secret nature, is insufficient to state a cognizable claim for relief.

Keener last argues in its motion that New South's putative claims for punitive damages and injunctive relief are due to be dismissed since Mississippi law recognizes no *cause of action* for punitive damages or injunctive relief and instead treats these as remedies only.   In fact, although denominated as a count for "Punitive Damages," New South's claim is in substance a claim for bad faith, the remedy for which it seeks an award of punitive damages.   The motion to dismiss this claim will be denied.

Further, in substance, the count for injunctive relief alleges that New South is entitled to injunctive relief for Keener's alleged violation of the Confidentiality and Non-Disclosure Agreement in order to prevent irreparable harm to New South.   In the court's view, regardless whether this claim for relief should have been denominated as a separate cause of action, the request for relief is properly before the court and the motion to dismiss will be denied.

Based on all of the foregoing, it is ordered that Keener's motion to dismiss for lack of personal jurisdiction is denied, and it is further ordered that his motion to dismiss for failure to

state a claim is granted except as to New South's claims for bad faith and injunctive relief.

SO ORDERED this 5th day of November, 2013.


                              /s/ Tom S. Lee
                              UNITED STATES DISTRICT JUDGE